UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACIELA CAMPOS,<br><br>                Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>                Defendant. | Case No. CV 08-5648 JC<br><br>MEMORANDUM OPINION |

## I.   SUMMARY

On September 8, 2008, plaintiff Graciela Campos ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's applications for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; September 10, 2008 Case Management Order, ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED.  The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

In March 2006, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits.  (Administrative Record ("AR") 65-71, 72-76).  Plaintiff asserted that she became disabled on September 1, 2005, due to back problems, high blood pressure, and diabetes.  (AR 94).  The ALJ examined the medical record and heard testimony from plaintiff, who was represented by counsel and assisted by an interpreter, on January 23, 2008.  (AR 27-46).

On February 8, 2008, the ALJ determined that plaintiff was not disabled through the date of the decision.  (AR 5-16).  Specifically, the ALJ found: (1) plaintiff suffered from the following combination of severe impairments:  disc space narrowing of the cervical spine at C5-7, osteophytes involving multiple levels of the thoracic spine, and disc space narrowing at L5-S1 (AR 10); (2) plaintiff's impairments or combination of impairments did not meet or medically equal one of the listed impairments (AR 12); (3) plaintiff could lift and carry 50 pounds occasionally, and 25 pounds frequently without further significant limitations and had the residual functional capacity to perform the full range of medium work[2] (AR 12, 15); (4) plaintiff could perform her past relevant work as a

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability.  See Batson v. Commissione of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, [the

(continued...)

1 machine presser and a stock clerk (AR 15); and (5) plaintiff's allegations
2 regarding her limitations were not totally credible (AR 14-15).
3     The Appeals Council denied plaintiff's application for review. (AR 1-3).
4 **III. APPLICABLE LEGAL STANDARDS**
5     **A. Sequential Evaluation Process**
6     To qualify for disability benefits, a claimant must show that she is unable to
7 engage in any substantial gainful activity by reason of a medically determinable
8 physical or mental impairment which can be expected to result in death or which
9 has lasted or can be expected to last for a continuous period of at least twelve
10 months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.
11 § 423(d)(1)(A)). The impairment must render the claimant incapable of
12 performing the work she previously performed and incapable of performing any
13 other substantial gainful employment that exists in the national economy. Tackett
14 v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).
15     In assessing whether a claimant is disabled, an ALJ is to follow a five-step
16 sequential evaluation process:
17 ///

---

[2](...continued)
Administration] determine[s] that he or she can also do sedentary and light work." See 20 C.F.R.
§§ 404.1567(c), 416.967(c). SSR 83-10 provides in pertinent part:

> The regulations define medium work as lifting no more than 50 pounds at a time
> with frequent lifting or carrying of objects weighing up to 25 pounds. A full range
> of medium work requires standing or walking, off and on, for a total of
> approximately 6 hours in an 8-hour workday in order to meet the requirements of
> frequent lifting or carrying objects weighing up to 25 pounds. As in light work,
> sitting may occur intermittently during the remaining time. Use of the arms and
> hands is necessary to grasp, hold, and turn objects, as opposed to the finer
> activities in much sedentary work, which require precision use of the fingers as
> well as use of the hands and arms.

See SSR 83-10.

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit her ability to work?[3] If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform her past relevant work?[4] If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

///

---

[3] To determine whether or not an impairment is severe, the ALJ must determine whether a claimant's impairment or combination of impairments significantly limits her physical or mental ability to do "basic work activities." See id., see also 20 C.F.R. §§ 404.1521 (a), 416.921(a). Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; (3) the use of judgment; and (4) the ability to respond appropriately to supervision, co-workers, and usual work situations. 20 C.F.R. §§ 404.1521(b), 416.921(b).

[4] Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

1  Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
2  Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).
3     The claimant has the burden of proof at steps one through four, and the
4  Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262
5  F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679
6  (claimant carries initial burden of proving disability).
7     **B.    Standard of Review**
8     Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
9  benefits only if it is not supported by substantial evidence or if it is based on legal
10 error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.
11 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457
12 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable
13 mind might accept as adequate to support a conclusion."  Richardson v. Perales,
14 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a
15 mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing
16 Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).
17    To determine whether substantial evidence supports a finding, a court must
18 "'consider the record as a whole, weighing both evidence that supports and
19 evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.
20 Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d
21 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
22 or reversing the ALJ's conclusion, a court may not substitute its judgment for that
23 of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).
24 ///
25 ///
26 ///
27 ///
28 ///

## IV. DISCUSSION

### A. The ALJ Was Not Required to Obtain Vocational Expert Testimony Regarding Plaintiff's Alleged Nonexertional Limitations

Plaintiff contends that the ALJ erroneously failed to obtain vocational expert testimony regarding her alleged nonexertional limitations. (Plaintiff's Motion at 2). Plaintiff is incorrect.

#### 1. Pertinent Facts

On April 7, 2006, B. Le, a field office interviewer, interviewed plaintiff in connection with her disability claim. (AR 87-89). Le reported that plaintiff, who only spoke Spanish, had difficulty understanding and concentrating. (AR 88). More specifically, Le stated that plaintiff "had difficulty understanding questions, even in her native language[] [and that] [q]uestions were repeated several times." (AR 89).

Plaintiff points to no other evidence in the record that suggests she had difficulty understanding and concentrating.

#### 2. Analysis

Plaintiff asserts that the ALJ was required to obtain testimony from a vocational expert testimony regarding her alleged nonexertional limitations due to the field interviewer's reported observations of plaintiff's mental limitations. This claim lacks merit.

First, plaintiff's contention that the ALJ was required to obtain testimony from a vocational expert is predicated upon the erroneous assumption that the field office interviewer's reported observations of plaintiff on a single occasion itself establishes that plaintiff suffered from significant mental limitations. It does not. "[T]he existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings[.]" Ukolov v. Barnhart, 420 F.3d 1002,

1005 (9th Cir. 2005) (quoting SSR 96-4p); see also 20 C.F.R. §§ 404.1513(a), 416.913(a) (Administration requires evidence from "acceptable medical sources," such as licensed physicians and psychologists to establish whether claimant has medically determinable impairment). The one-time observation of Le, who was a field office interviewer and not a physician, was legally insufficient to establish that plaintiff suffered from a mental impairment. Plaintiff points to no evidence that she ever complained of, received treatment for, or was diagnosed with any mental impairment, let alone a severe mental impairment which significantly limited her ability to function or work. Accordingly, to the extent plaintiff implicitly challenges the ALJ's failure to find that she suffered from a severe mental impairment that significantly limited her ability to work – facts as to which plaintiff had the burden of proof – the Court rejects such a challenge.

Second, and in light of the foregoing, plaintiff fails to demonstrate that the ALJ erred in filing to obtain the testimony of a vocational expert. In the case upon which plaintiff relies – Auckland v. Massanari, 257 F.3d 1033 (9th Cir. 2001) – the Ninth Circuit concluded that a remand to obtain testimony of a vocational expert was appropriate to assess whether, in light of the claimant's non-exertional limitations, there were a significant number of jobs in the national economy that the claimant could do – a step five determination. Id. at 1037. Here, as discussed below, the ALJ properly resolved this matter at step four of the sequential evaluation process. Accordingly, the ALJ had no need to proceed to step five or to obtain the testimony of a vocational expert, even assuming the ALJ otherwise would have been required to do so. See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (determination at step four that claimant could return to past relevant work need not be supported by vocational testimony).

In light of the foregoing, plaintiff is not entitled to relief on her first claim.

///
///

**B.     The ALJ Properly Considered Plaintiff's Obesity**

Plaintiff claims that the ALJ failed to consider the impact of her obesity on her ability to work. (Plaintiff's Motion at 3-6). Again, she is mistaken.

**1.     Pertinent Facts**

The medical records contain many varying measurements of plaintiff's height and weight. Plaintiff's height has been measured as five feet and one-quarter inch (AR 167, 188), five feet four inches (AR 225, 231, 262, 279), and five feet seven inches (AR 205).[5] Her weight has been measured anywhere from 179 pounds to 202 pounds. (AR 135, 137, 141, 145, 149, 151, 167, 188, 205, 224-25, 231, 234-35, 262, 297, 299). On two occasions, a physician noted that plaintiff's build was obese, but did not make any findings that plaintiff's obesity constituted a medical impairment, that it was severe, or that it caused any functional limitations, separately, or in combination with plaintiff's other alleged impairments. (AR 167, 188).

Plaintiff's applications for benefits were based on her claim that she was disabled as a result of back problems, high blood pressure, and diabetes. (AR 94). Neither plaintiff nor her counsel raised the issue of obesity in plaintiff's benefits applications or at the hearing.

In his decision, the ALJ expressly addressed plaintiff's obesity, finding that it was not severe. (AR 10-11). The ALJ pointed out that it was not entirely clear how obese plaintiff was because reports of her height and weight had varied dramatically. (AR 11). The ALJ noted that plaintiff's primary care physician had repeatedly reported that plaintiff's body mass index ("BMI") was over 30, specifically between 30 and 33, which is at the low end of the obesity scale. (AR 11) (citing Exhibit 7F at 17-18 [AR 236-37]). Nevertheless, the ALJ pointed out

---

[5]In her disability report, plaintiff reported that she was five feet three inches tall. (AR 93). However, at the hearing, she testified that she was four feet five inches tall. (AR 39).

8

that there was no evidence that plaintiff's weight adversely affected her range of motion or her ability to move about. (AR 11). To the contrary, plaintiff was found to have a normal gait during an examination performed by a state agency examining medical consultant, and during two separate physicals performed by another physician. (AR 11) (citing Exhibits 4F, 5F at 7 [AR 159-200, 207]). The ALJ pointed out that the only limitations noted during such examinations were cervical and lumbar in nature, and a slight reduction in extension involving the claimant's shoulders. (AR 11). Otherwise, plaintiff had full range of motion. (AR 11). One doctor even questioned the reliability of plaintiff's reduced range of motion presentation. (AR 11) (citing Exhibit 4F at 15, 26 [AR 173, 184]). The ALJ noted that no source had indicated that plaintiff had any weight related loss of physical function. (AR 11). In light of that fact, and considering the mild nature of plaintiff's obesity, according to the BMI, the ALJ concluded that there was little to indicate that such condition separately, or in combination with her other impairments, significantly limited her ability to function. (AR 12).

### 2.     Applicable Law

In Celaya v. Halter, 332 F.3d 1177 (9th Cir. 2003), the Ninth Circuit held that an ALJ should consider the effect of the claimant's obesity, in combination with her other impairments, on her health and ability to work even where the claimant does not raise the issue. Id. at 1182. The Ninth Circuit came to this conclusion for three reasons: (1) the claimant had implicitly raised the issue of obesity in her report of symptoms; (2) the record clearly showed that the claimant's obesity was at least close to the listing criterion, and was a condition that could exacerbate her reported illness; and (3) in light of the claimant's *pro se* status, the ALJ's personal observation of the claimant and the information in the record should have alerted him to the need to develop the record on her behalf.

///

///

1  Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005) (citing Celaya, 332 F.3d at
2  1182).[6]
3      More recently, in Burch, the Ninth Circuit distinguished its holding in
4  Celaya, finding no reversible error in the ALJ's failure to consider the claimant's
5  obesity at multiple steps of the sequential evaluation process where (i) the
6  claimant was represented by counsel; (ii) the record did not indicate that the
7  claimant's obesity exacerbated her other impairments (other than possibly her
8  back pain), and (iii) the claimant failed to (a) specify which listing she believed
9  she met or equaled; (b) did not set forth any evidence which would support the
10 diagnosis and findings of a listed impairment; and (c) pointed to no evidence of
11 functional limitations due to obesity which would have impacted the ALJ's
12 analysis. Burch, 400 F.3d at 682-84.

### 3. Analysis

Here, despite the fact that plaintiff was represented by counsel at the hearing, neither plaintiff nor her counsel raised the issue of obesity at the hearing (or in her disability applications). Nevertheless, contrary to plaintiff's assertion that "the ALJ totally failed to consider plaintiff's obesity in his decision" (Plaintiff's Motion at 6), the ALJ expressly and extensively discussed plaintiff's obesity as summarized above. While plaintiff quarrels with the thoroughness of the ALJ's assessment of plaintiff's obesity, this Court finds no material error.

As in Burch, the record does not indicate that plaintiff's obesity exacerbated her other impairments, and plaintiff has utterly failed to specify which listing she believes she met or equaled, to set forth any evidence which would support the diagnosis and findings of a listed impairment, and to point to any evidence that she suffered from functional limitations due to obesity, let alone limitations which

---

[6] The claimant in Celaya was four feet five inches or four feet nine inches tall and weighed between 205 and 213 pounds. Celaya, 332 F.3d at 1179. Plaintiff weighed less than the claimant in Celaya and was at least three inches taller.

would have impacted the ALJ's analysis. Although a physician noted, on two occasions, that plaintiff appeared obese, he did not diagnose plaintiff as such or find that plaintiff suffered from any functional limitations due to her weight. Plaintiff's current speculation that her obesity might have impacted her cardiovascular and respiratory systems and caused her to be frequently fatigued, does not constitute evidence and falls far short of meeting her burden of proof.

In short, on the facts presented here, plaintiff has failed to show that the ALJ's assessment and findings regarding plaintiff's obesity was erroneous. See Burton v. Astrue, 310 Fed. Appx. 960, 961 n.1 (9th Cir. 2009) (unpublished) (rejecting plaintiff's assertion that ALJ failed adequately to consider plaintiff's obesity where plaintiff failed to specify how his obesity limited his functional capacity or how it exacerbated his currently existing condition; noting that ALJ's consideration of obesity in overall assessment that plaintiff was capable of working was proper); Hoffman v. Astrue, 266 Fed. Appx. 623 (9th Cir. 2008) (unpublished) (ALJ's failure to consider plaintiff's obesity in relation to residual functional capacity proper because plaintiff failed to show how his obesity in combination with another impairment increased severity of his limitations).[7]

### C. The ALJ Properly Considered the Mental and Physical Demands of Plaintiff's Past Relevant Work

Plaintiff argues that the ALJ's determination that plaintiff was capable of performing her past relevant was erroneous because he failed properly to consider the mental and physical demands of her past relevant work. (Plaintiff's Motion at 6-8).

///
///

---

[7]The Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

### 1.     Pertinent Facts

In a work history report, plaintiff reported that she had worked as, *inter alia*, a machine presser in a dry cleaners and a stock clerk in a store, stating as follows:[8] Plaintiff's job as a machine presser required her to press clothes and to lift and carry them a distance of four yards approximately four to six times a day. (AR 111-12). She frequently lifted ten pounds and the heaviest weight she lifted was twenty pounds. (AR 111-12). The job required plaintiff to stand eight hours a day.[9] (AR 111-12). Plaintiff's job as a stock clerk required her to stock merchandise and lift approximately twenty boxes a day. (AR 113). She frequently lifted twenty pounds and the heaviest weight she lifted was thirty pounds. (AR 113). In this job, plaintiff stood or walked six hours a day. (AR 113).

At the hearing concerning her past relevant work, plaintiff elaborated upon her prior work experience, testifying to the following: Plaintiff's work as a stock clerk involved stocking merchandise on shelves that were "not heavy." (AR 36-37). However, she would at times have to lift boxes that were "heavy." (AR 37). These "heavy" boxes would typically contain twelve bottles of shampoo. (AR 37). Plaintiff's work as a machine presser involved carrying clothes that had been cleaned, putting starch on them, and ironing them. (AR 37-38). This job required her to work in a standing position. (AR 37-38).

As noted above, the ALJ found that plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently without further significant limitations, and that she could perform the full range of medium work. (AR 12,

---

[8] Plaintiff initially identified her prior jobs as "machine operator" and "stocker." (AR 110). Based on plaintiff's description of her prior jobs, the ALJ identified them as "machine presser" and "stock clerk," respectively. (AR 15). Plaintiff does not challenge the ALJ's classification of her prior jobs.

[9] However, in another disability report, plaintiff reported that her work as a machine presser required her to stand for seven hours a day and that the heaviest weight she lifted was less than ten pounds. (AR 103).

15). He further determined that plaintiff could perform her past relevant work as a machine presser and a stock clerk and that they did not require the performance of work-related activities precluded by her residual functional capacity. (AR 15). In support of his conclusion that plaintiff could perform her past relevant work, the ALJ found: (1) plaintiff's past job as a machine presser (Dictionary of Occupational Titles ("DOT") No. 363.682-018) was medium, unskilled work with a Special Vocational Preparation ("SVP") of 2; (2) plaintiff actually performed the work of a machine presser at the light exertional level; (3) plaintiff could performed the work of a machine presser as actually and generally performed; (4) plaintiff's past job as a stock clerk (DOT No. 299.367-014) was heavy, semiskilled work with an SVP of 4[10]; (5) plaintiff actually performed the work of a stock clerk at the medium exertional level; and (6) plaintiff could perform the work of a stock clerk as actually performed but not as generally performed. (AR 15-16).

### 2. Applicable Law

The Administration may deny benefits when the claimant can perform the claimant's past relevant work as "actually performed," or as "generally" performed. Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001). Although the claimant has the burden of proving an inability to perform her past relevant work, "the ALJ still has a duty to make the requisite factual findings to support his conclusion." Id. at 844. "To determine whether a claimant has the residual capacity to perform [her] past relevant work, the [Administration] must ascertain the demands of the claimant's former work and then compare the demands with [her] present capacity." Villa v. Heckler, 797 F.2d 794, 797-98 (9th Cir. 1986). In finding that an individual has the capacity to perform a past relevant job, the

---

[10]The ALJ initially erroneously noted that the work of a stock clerk required an SVP of 2. (AR 15). However, he later correctly noted that the job required an SVP of 4. (AR 16).

determination or decision must contain the following specific findings of fact: (1) a finding of fact as to the individual's residual functional capacity; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's residual functional capacity would permit a return to her past job or occupation. SSR 82-62.

### 3. Analysis

Plaintiff argues that the ALJ erred in failing to discuss any of the actual mental and physical demands of her past relevant work. (Plaintiff's Motion at 6-8). Contrary to plaintiff's contention, the ALJ did make specific findings of fact regarding plaintiff's past relevant work. Specifically, the ALJ relied on the DOT in determining the mental and physical demands of plaintiff's past relevant jobs as they are <u>generally</u> performed (<u>i.e.</u>, machine presser was medium, unskilled work with a SVP of 2 and stock clerk was heavy, semiskilled work with an SVP of 4). DOT Nos. 299.367-014, 363.682-018. This was proper. <u>See</u> <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1276 (9th Cir. 1990) (ALJs routinely rely on the DOT "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy") (citations omitted); <u>see also</u> <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1435 (9th Cir. 1995) (the DOT is the presumptive authority on job classifications); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1) (DOT is source of reliable job information). Moreover, in determining the physical demands of plaintiff's past relevant jobs as they were <u>actually</u> performed, the ALJ properly relied on plaintiff's own description of her jobs in the work history report and at the hearing (<u>i.e.</u>, machine presser was performed at the light exertional level and stock clerk was performed at the medium exertional level). <u>See</u> <u>Pinto</u>, 249 F.3d at 845 (the ALJ may look to a claimant's written statements and testimony in determining the demands of the claimant's past work); <u>see also</u> SSR 82-62 ("[S]tatements by the claimant regarding past work are generally sufficient for determining the skill level,

exertional demands and nonexertional demands of such work."). Based on plaintiff's residual functional capacity, the ALJ properly concluded that plaintiff could perform her past relevant work of machine presser as actually and generally performed and she could perform her past relevant work of stock clerk as actually performed.[11]

For the foregoing reasons, the Court concludes that the ALJ provided specific findings of fact as to the physical and mental demands of plaintiff's past relevant work and properly concluded that she had the residual functional capacity to perform such work.

### D. The ALJ Did Not Materially Err in Evaluating the Examining Physician's Opinion

Plaintiff contends that the ALJ rejected the opinion of the consultative examiner, Dr. Homayoun Saeid, without providing any legally sufficient reasons. (Plaintiff's Motion at 8-10). Specifically, plaintiff argues that the ALJ failed to discuss, or even mention, Dr. Saeid's opinion regarding plaintiff's ability to stand, walk, and sit. (Plaintiff's Motion at 9).

#### 1. Applicable Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A

---

[11]To the extent the ALJ mischaracterized plaintiff's statements concerning the actual demands of her past work, any such error is harmless, in light of the fact that substantial evidence otherwise supports the ALJ's finding that plaintiff could perform her past work of machine presser as generally performed.

treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[12] See id.

As with a treating physician, the Commissioner must present "clear and convincing" reasons for rejecting the uncontroverted opinion of an examining physician and may reject the controverted opinion of an examining physician only for "specific and legitimate reasons that are supported by substantial evidence." Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81 F.3d at 830-31).

### 2. Pertinent Facts

On September 6, 2006, Dr. Saeid, an internist, examined plaintiff and performed a consultative internal medical evaluation. (AR 203-208). Dr. Saeid found that plaintiff could (i) lift and carry 50 pounds occasionally and 25 pounds frequently; (ii) stand or walk for six hours in an eight-hour day; and (iii) sit for six hours in an eight-hour day. (AR 208).

As noted above, the ALJ found that plaintiff could lift and carry 50 pounds occasionally, and 25 pounds frequently without further significant limitations, and that she had the residual functional capacity to perform the full range of medium. (AR 12, 15). In so concluding, the ALJ relied, in part, on Dr. Saeid's opinion.[13] (AR 12-13).

///
///

---

[12]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

[13]The ALJ noted that Dr. Saeid's opinion was consistent with the medical records. (AR 13).

### 3. Analysis

Contrary to plaintiff's assertion, the ALJ did not reject Dr. Saeid's finding that regarding plaintiff's ability to stand, walk, and sit. Rather, the ALJ appears to have implicitly adopted such opinion as the ALJ's residual functional capacity finding encompassed all of Dr. Saeid's assessments. As noted above, "medium work" involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds. 20 C.F.R. §§ 404.1567(c), 416.967(c). A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday. SSR 83-10. If a person can do medium work, she is also able to do sedentary[14] and light work.[15] 20 C.F.R. §§ 404.1567(c), 416.967(c). In light of the fact that Dr. Saeid's opinion was consistent with the ALJ's residual functional capacity determination, the Court finds that the ALJ's failure specifically to discuss all of Dr. Saeid's opinion, if error at all, was harmless.

### E. The ALJ Properly Considered Plaintiff's Residual Functional Capacity

Plaintiff argues that the ALJ failed properly to consider her residual functional capacity. (Plaintiff's Motion at 10-12). Specifically, she alleges that the ALJ failed properly to consider her obesity, her alleged mental impairment, and Dr. Saeid's opinion concerning her ability to stand, walk, and sit. (Plaintiff's

---

[14]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

[15]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b).

Motion at 10-12). This claim is derivative of plaintiff's other claims and fails for the reasons discussed above. In short, the ALJ's residual functional capacity assessment is supported by substantial evidence and is free from material error.

**V.  CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: August 24, 2009

                                        _____/s/_____
                                        Honorable Jacqueline Chooljian
                                        UNITED STATES MAGISTRATE JUDGE